UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

ULISES LEDO,                      )
                                  )
          Petitioner,             )
v.                                )   No. 1:07-cv-1199-SEB-JMS
                                  )
BRETT MIZE,                       )
                                  )
          Respondent.             )

**Entry Denying Petition for Writ of
Habeas Corpus and Directing Entry of Judgment**

The petition of Ulises Ledo for a writ of habeas corpus is denied and this action is dismissed with prejudice. This disposition is compelled because (1) the Indiana state courts did not reach a decision that was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court as to claims he has properly preserved for review in this proceeding, and (2) the court may not reach the merits of claims as to which he has committed procedural default.

**I. Background**

Ledo was convicted in an Indiana state court of felony murder and of two counts of burglary. He was also found to be an habitual offender. His convictions were affirmed on appeal in *Ledo v. State,* 741 N.E.2d 1235 (Ind. 2001) (*Ledo I*). These convictions arose out of events occurring on February 24, 1997, when he and Bryan Fitzhugh entered Mr. Osterholt's mobile home, Fitzhugh shot and killed Osterholt at Ledo's direction, and the pair left the mobile home, taking guns and other items with them. Ledo and others later returned to the mobile home, entered it, and removed more of the victim's property. *Id.* at 1237. The trial court's subsequent denial of Ledo's petition for post-conviction relief was affirmed on appeal in *Ledo v. State*, No. 02A03-0602-PC-49 (Ind.Ct.App. May 15, 2007) (unpublished memorandum decision) (*Ledo II*).

This action followed. Ledo seeks a writ of habeas corpus based on his claims that 1) the evidence was insufficient to support his conviction for Burglary based on the return trip to the mobile home, 2) his Class B felony Burglary conviction violates the Fifth Amendment's prohibition against double jeopardy, 3) he was denied the effective assistance of counsel at trial, and 4) the trial judge had a conflict of interest.

## II. Discussion

### A. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). *See Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004).

Review of the habeas petition here is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d)(1), (2); *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

In addition to the foregoing substantive standard, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). Procedural default occurs either (1) when a petitioner failed to exhaust state remedies and the court to which he would have been permitted to present his claims would now find such claims procedurally barred, *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1990), or (2) "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729. When a habeas petitioner has committed procedural default, the habeas court may not reach the merits of the habeas claims unless the habeas petitioner overcomes the consequences of that waiver by "demonstrat[ing] either (a) cause for the default and prejudice (i.e., the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v. McBride,* 375 F.3d 643, 648 (internal citations omitted).

### B. Sufficiency of the Evidence as to the Second Burglary

Ledo's challenge to the sufficiency of the evidence as to the Burglary offense associated with his return trip to the mobile home was presented in his direct appeal. Under the AEDPA, federal review of a challenge to the sufficiency of the evidence "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson's* 'no rational trier of fact' test." *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds, Gomez v. DeTella,* 522 U.S. 801 (1997). The only appropriate inquiry under *Jackson v. Virginia,* 443 U.S. 307, 319 (1979),

> is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.

*Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988).

The Indiana Supreme Court reviewed the evidence of what transpired on that occasion–including the taking of property from the mobile home–and concluded that "[a] reasonable jury could have concluded that Defendant intended to commit theft when he broke into and entered the mobile home." *Ledo I,* 741 N.E.2d at 1237. As to the classification of the Burglary as a Class B felony, under Indiana law this could have been supported by a showing that the burglary was either (1) committed with a deadly weapon, and (2) involved breaking and entering a dwelling. The mobile home was a dwelling. The Indiana Supreme Court's discussion of the evidence provided Ledo and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* "no rational trier of fact" test. This determination that the evidence was sufficient did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1), and hence Ledo is not entitled to relief based on this claim.

### C.  Double Jeopardy

Ledo claims that his Class B felony Burglary conviction, based on the return trip to the mobile home, violates the Fifth Amendment's prohibition against double jeopardy. The imposition of more than one conviction for the same criminal act violates the Double Jeopardy Clause of the Fifth Amendment. *Schiro v. Farley,* 510 U.S. 222, 229 (1994); *United States v. Colvin,* 276 F.3d 945, 948 (7th Cir. 2002); *United States v. Handford,* 39 F.3d 731, 735 (7th Cir. 1994).

Ledo raised this claim on direct appeal under Indiana law. A decision under Indiana's double jeopardy jurisprudence, whether correctly applied or not, does not support a cognizable claim under § 2254(a). *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). In any event, the Indiana Supreme Court approached the question in Ledo's case by looking at the evidence. Its reasoning and conclusion were as follows:

> Defendant and his co-conspirators took the victim[']s property during two separate acts of burglary. After the first burglary, Defendant returned with a different group of accomplices and broke and entered the victim's mobile home for the second time. In this particular case, the new accomplices and the lapse of time establish that the second break-in was a separate act done with a new and distinct intent to commit a felony.

*Ledo I*, 751 N.E.2d at 1238.

The Indiana Supreme Court thus found no double jeopardy violation here because the burglary offenses, though similar, occurred at different times with different accomplices. The Seventh Circuit Court of Appeals has employed the same reasoning. *See, e.g., United States v. Conley,* 291 F.3d 464, 473 (7th Cir. 2002). Even if this court found a federal basis for the manner in which this claim was presented in *Ledo I,* Ledo has not demonstrated that the Indiana Supreme Court's decision on this point was contrary to or an unreasonable application of federal law.

### D.  Ineffective Assistance of Counsel

Ledo's argument here is that his trial counsel rendered ineffective assistance by: 1) failing to object to witnesses' reference to prior bad acts; 2) failing to object to statements that the testimony that they were giving was truthful; 3) failing to object to alleged hearsay; 4) failing to advise him of the trial judge's conflict of interest; and 5) failing to investigate DNA evidence.

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith,* 539 U.S. 510 (2003). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

A federal habeas court does not apply the principles of *Strickland* directly, but instead analyzes whether the state courts reasonably applied federal law in concluding that counsel was not ineffective. *See Conner v. McBride,* 375 F.3d 643, 657 (7th Cir. 2004). "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). Accordingly, this court is required to deny the writ relative to this claim, at least as long as the Indiana courts "t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000).

The Indiana Court of Appeals recognized the *Strickland* standard and examined the circumstances surrounding Ledo's ineffectiveness claims. Specifically, the Indiana Court of Appeals reviewed each of Ledo's claims of ineffective assistance of counsel and in each instance took the *Strickland* standard seriously and produced an answer within the range of defensible positions.

! *Prior bad acts.* Ledo claims that his attorney was ineffective because he did not invoke Indiana Evidence Rule 404(b) and object to testimony related to Ledo's prior bad acts. The Indiana Court of Appeals, in addressing the first prong of *Strickland*, explained as to Ledo's drug use, "[g]iven that the testimony did not violate Evidence Rule 404(b), Ledo has failed to meet his burden of establishing that had an objection been made, the trial court would have sustained the objection." *Ledo II,* at p. 7. As to testimony regarding Ledo's drug dealing, selling fake drugs and shoplifting, the Indiana Court of Appeals explained that although it is likely an objection would have been sustained, nevertheless, Ledo failed to demonstrate prejudice. *Id.* at p.8 ("we cannot say that Ledo was prejudiced to the extent that, but for his counsel's failure to object, the result of the proceeding would have been different" and, "we find that the testimony did nothing to bolster the witnesses' credibility where they admitted to participating in the acts about which they were testifying").

! *Witness vouching.* Ledo claims that his attorney was ineffective because he did not object to statements by Fitzhugh and Clevenger that the testimony they gave was truthful. Once again, the post-conviction court correctly recognized the *Strickland* standard, *Ledo II,* at pp.10-11, reasonably applied that standard, and did not reach a result which was either "contrary to" or an "unreasonable application of" *Strickland.* The Indiana Court of Appeals focused on the second prong or the "prejudice" component of a *Strickland* analysis and found the element of prejudice absent. *See Conner v. McBride,* 375 F.3d 643, 666 (7th Cir. 2004)("To put it simply, with respect to the complaints regarding motions practice and alleged failures to object to certain evidence and opposing counsel's arguments, it is impossible for us to say that the [post-conviction] court unreasonably held that Conner failed to meet his burden to show either counsels' deficiency or, even assuming error, any discernable prejudice."). This included Ledo's contentions that his attorney failed to object to witnesses' statements about the truthfulness of their testimony. The Indiana Court of Appeals concluded that, "we do not find, however that their brief statements that they testified truthfully bolstered their credibility or impinged upon the province of the jury to determine their credibility. Ledo has failed to demonstrate that there is a reasonable probability that, but for trial counsel's failure to object to the testimony, the result of the trial would have been different." *Ledo II*, at p. 11.

! *Alleged Hearsay.* Ledo claims that his attorney failed to object to purported hearsay testimony. The Indiana Court of Appeals reviewed the first instance, and concluded that, "[g]iven that the admission of Warner's testimony is an exception to the hearsay rule, Ledo cannot show that the trial court would have sustained an objection to it." *Id.* at p.12. As to the second alleged instance, the Indiana Court of Appeals considered other witness testimony and concluded, "we cannot say that the admission of Vielhauer's testimony prejudiced Ledo to the extent that had the trial court sustained an objection to it, the outcome of the proceeding would have been different. Furthermore, Ledo fails to show how the failure to object to Vielhauer's testimony regarding Fitzhugh's statement prejudiced him." *Id.* at pp.12-13. This was

a reasonable application of *Strickland* to the circumstances of the case, and is wholly in accord with the principle that "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001).

! *Conflict of interest.* Ledo claims that his attorney was ineffective for failing to adequately advise him that the trial judge had an obligation to recuse herself because of her involvement as counsel for the State in a prior felony prosecution that was used to support the charge that Ledo was a habitual offender. The Indiana Court of Appeals reviewed this claim and concluded that "Ledo's trial counsel advised Ledo of Judge Gull's apparent conflict of interest and that she redacted her signatures from all documents submitted to the jurors," and, "Ledo has failed to demonstrate either prejudice or bias." *Id.* at pp.14-15. The Indiana Court of Appeals' decision neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Yarborough v. Alvarado,* 541 U.S. 652, 660-61(2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'") (quoting *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003)).

! *DNA evidence.* Ledo claims that his attorney was ineffective for failing to investigate DNA evidence. The Indiana Court of Appeals reviewed Ledo's claim and concluded that, "Ledo, however, presents no evidence that tests for DNA evidence were either performed or completed or that there was any DNA evidence in this case." *Ledo II*, at p.16. The Indiana Court of Appeals noted that trial counsel testified at post-conviction that, pursuing DNA testing 'probably wouldn't have helped.' Thus, not investigating the possible presence of DNA evidence or not pursuing DNA evidence, which may have been prejudicial to Ledo, was a tactical decision, and we defer to such a decision." *Id.* (citation omitted). Again, the state court's decision to deny this claim was neither "contrary to" nor an "unreasonable application of" clearly established federal law.

Because "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman v. Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997) (citations omitted), and because no such clear error–and no error at all--occurred in *Ledo II,* Ledo is not entitled to federal habeas relief based on his specifications of ineffective assistance of counsel.

### E. Trial Judge's Conflict of Interest

Ledo claims that Judge Gull should not have presided over the habitual phase because of her role as counsel for the state in a conviction that was used to charge Ledo as an habitual offender. When asserted in the post-conviction action, the Indiana Court of Appeals noted that the claim was available to be included with Ledo's direct appeal, that the rules of post-conviction relief provided that an issue known and available, but not raised

on direct appeal, is waived, and that Ledo had waived the claim in post-conviction. *Ledo II*, at pp. 16-17.

The finding of waiver just described is a finding of procedural default. As set forth above, such a finding limits the availability of federal relief. *See Conner v. McBride,* 375 F.3d at 649 (internal citations omitted). Here, Ledo does not overcome the procedural hurdle in the finding of waiver, and therefore, he is not entitled to relief on this claim.

### III. Conclusion

Ledo's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[1] This court has carefully reviewed the state record in light of Ledo's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. One claim is barred by his unexcused procedural default. As to the remaining claims, a federal court may issue a writ of habeas corpus only if the state court reached a decision that was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Julian v. Bartley,* 495 F.3d 487, 492 (7th Cir. 2007) (internal citations omitted). Such a showing has not been made here. Ledo's petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 06/04/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).